INDUSTRIAL & GENERAL TRUST, Limited, v. TOD et al.

(Supreme Court, Appellate Division, First Department. April 15, 1904.)

1. CONTRACT—IMPLIED AGREEMENT.
   Where, on the foreclosure of a mortgage securing the bonds of an insolvent railway company, a receiver was appointed, and a sale of the property was about to take place, and the bondholders appointed a committee, and entered into an agreement to acquire the property covered by the mortgage, and effect a reorganization of the company, either with or without foreclosure, no agreement was implied that the committee should file a plan of reorganization before sale of the mortgaged property.

2. SAME—BREACH—DAMAGE.
   Where an agreement was made between the holders of bonds of an insolvent railway company, whereby a committee was appointed to acquire property of the company, and to provide a plan of reorganization, the bondholder was not damaged by the breach of contract, if any, of the committee, in failing to file a plan of reorganization before sale of the company's property on foreclosure of mortgage securing the bonds, where the committee purchased the property at the foreclosure sale, and tendered title to the bondholders.

3. SAME—REORGANIZATION OF INSOLVENT COMPANY—RATIFICATION.
   Where, in an agreement between the holders of bonds of a railway company, it was provided that the plan of reorganization filed by a committee appointed by the bondholders should be binding on them, unless they should withdraw their bonds within 30 days after notice thereof, the consent and approval of the plan by a bondholder was conclusively given by its failure to withdraw its bonds within the prescribed time.

4. AMENDED COMPLAINT—FACTS OCCURRING AFTER COMMENCEMENT OF ACTION.
   Where an amended complaint was served in an action at law, facts stated therein, though occurring after the commencement of the action, may nevertheless be considered in determining the rights of the parties.

Action by the Industrial & General Trust, Limited, against J. Kennedy Tod and another. Motion for a new trial on exceptions taken to the dismissal of the complaint at the close of plaintiff's case ordered to be heard in the first instance at the Appellate Division. Motion denied and exceptions overruled.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Louis Marshall, for plaintiff.
Stephen H. Olin, for defendants.

McLAUGHLIN, J. This action was originally brought to recover damages for the alleged conversion of certain bonds of the Birmingham, Sheffield & Tennessee River Railway Company. The plaintiff had a recovery, which was affirmed by this court (52 App. Div. 195, 64 N. Y. Supp. 1093), but reversed by the Court of Appeals, and a new trial ordered (170 N. Y. 237, 63 N. E. 285). Intermediate the reversal of the judgment and the new trial, the plaintiff, by permission of the court, served an amended complaint, by which the action was changed from one to recover for conversion to one to recover for the breach of a contract. The issues raised by an answer to the amended complaint came on for trial, where, at the close of plaintiff's case, the complaint was dismissed, and the exception taken

thereto, as well as those taken during the trial, ordered to be heard in the first instance at the Appellate Division.

There is little or no dispute as to the material facts involved. On the 1st of April, 1889, the Birmingham, Sheffield & Tennessee River Railway Company, a corporation organized under the laws of the state of Alabama, executed a mortgage to the Knickerbocker Trust Company of New York upon all its property, including its franchises, to secure the payment of an issue of bonds and coupons thereto attached, of which there was then or thereafter issued 2,975 bonds, of the par value of $1,000 each. In June, 1893, the railway company, having previously defaulted in the payment of the interest on the bonds, the trust company instituted a suit in the United States Circuit Court for the Northern Division of the Northern District of Alabama for the foreclosure of the mortgage, and the sale of the property covered thereby. In this suit a receiver was appointed pendente lite of all the corporate property of the railway company. At the time the suit was commenced and the receiver appointed, the plaintiff, an English corporation, held 570 of the bonds above referred to, which it had previously placed in the hands of its counsel in New York, Mr. Untermyer, who then and thereafter represented and looked after its interest with reference thereto. The receiver endeavored to effect a reorganization of the railway company, but his efforts in this direction were unavailing; and on the 9th of April, 1895, a reorganization agreement was executed, by which J. Kennedy Tod, Edmund A. Hopkins, and James G. Leiper were appointed a committee to represent the bondholders. In pursuance of this agreement, the plaintiff, through Mr. Untermyer, deposited its bonds with the Manhattan Trust Company, and received in lieu thereof a certificate, negotiable in form, which stated that the bonds were held by the Manhattan Trust Company in accordance with the terms and conditions of the reorganization agreement. This agreement, when the case was before the Court of Appeals (170 N. Y. 234, 63 N. E. 285), was summarized by it as follows:

"This reorganization agreement recited the insolvency of the railway company, the pendency of the foreclosure proceedings, the appointment of a receiver, and the necessity for the bondholders to reorganize for the protection of their mutual interests. It provided, in the first article, that the bonds should be deposited with the Manhattan Trust Company, 'subject to the order and full control of the committee, to be used for any purposes under this agreement. The deposit of such bonds shall transfer to the committee the full legal and equitable title thereto for all the purposes of this agreement.' The second article constituted the defendants a reorganization committee, and in succeeding articles were set forth the powers of the committee. The fourth article provided, so far as material, that 'the committee is hereby expressly authorized and empowered, and it shall be its special duty, to prepare and adopt a plan for the reorganization of the affairs of the railway company, with or without foreclosure. When the committee shall have adopted such plan, a copy thereof shall be lodged with the Manhattan Trust Company. Notice shall thereupon be given to the holders of the trust certificates issued hereunder, and such plan shall become binding upon all of the said holders who do not withdraw herefrom (in the manner hereinafter provided), unless the holders of a majority in interest of the said certificates, shall, within twenty days after such notice, file with the Manhattan Trust Company their written dissent from the plan.' The fifth article provided, so far as material, that 'any holder of a trust certificate issued hereunder may, at any time within thirty days

after the mailing to him of notice of the filing of a plan of reorganization; as hereinbefore provided, withdraw from this agreement and recover back the bond or bonds deposited by him upon payment of his pro rata share of the expenses theretofore incurred by the committee,' etc. The sixth article provided that the committee, for the purpose of effecting a reorganization of the affairs of the railroad company, was authorized to take such steps as it might deem advisable for the formation of a new corporation, and for transferring to the new corporation all the assets of the railway company, and it was authorized to 'use the deposited bonds for the purpose of paying for any assets or franchises purchased.' The eleventh article provided, so far as material, that 'the committee may supply any defects or omissions which it may deem necessary to be supplied to enable it to carry out the general purpose of this agreement. The committee is authorized to construe this agreement and its construction shall be final.' The twelfth article provided that no member of the committee shall be liable for 'anything but his own wilful misconduct.' "

The agreement contained no express provision that the plan of reorganization referred to in the fourth paragraph should be filed by the committee before a sale of the property was had, nor was there any provision in it as to the time when the same was to be prepared and filed. This fact was seemingly of some little concern to Mr. Untermyer, because, as appears from the evidence offered at the trial, he endeavored at various times, both before and subsequent to the sale, to ascertain from the committee when the plan would be prepared, and what steps were being taken in that direction. Thus, as early as July 9, 1895, he wrote to the committee, or its chairman, saying:

"I am this morning in receipt of advices from London asking if any plan of reorganization has as yet been drafted or suggested. May I ask you to advise me whether such a plan is now under consideration and how soon they are likely to be advised of its details? Will you also kindly inform me whether judgment has now been entered in the foreclosure suit and if so, when it is proposed to sell the property?"

To which the chairman of the committee, on the 16th of July, replied:

"A decree of sale has been entered. The property is now being advertised for sale and will, I understand, be sold upon the 16th day of September. No plan has yet been adopted and I am unable to predict the probable date upon which a plan will be issued, but I have not forgotten your request to be advised of it in advance."

On the 16th of September, 1895, after the sale had been duly advertised both in New York and Alabama, the property covered by the mortgage was sold at public auction, and the same bid in by the committee (then consisting of the defendants Tod and Leiper; Hopkins, the other member, having in the meantime resigned) for $500,-000, which sum the decree had fixed as the lowest bid to be entertained by the commissioner appointed to conduct the sale. On the 29th of October following, the sale, by an order of the court, was duly confirmed, and between that date and the 30th of November, 1895, the defendants caused to be incorporated the Northern Alabama Railway Company, to which, by leave of the court, it assigned the bid at the foreclosure sale. On the 30th of November, 1895, the sale was completed by the payment of the purchase price, which was partly in cash and partly by use of the bonds held by the committee, and the delivery of a deed to the new corporation. There-

after the commissioner who made the sale attended at the office of the Manhattan Trust Company, which held the bonds as depository for the committee, and indorsed upon each bond the following: "New York, 29th November, 1895. $139.76 paid on this bond as part of the proceeds of sale under foreclosure. J. Fred Johnson, Commissioner." After this indorsement had been made, the bonds were left with the trust company, where they now are. The Northern Alabama Railway Company issued certain mortgage bonds, which, with its entire capital stock, were held by or for the reorganization committee; and the same was continued to be so held until July, 1898, when a plan of reorganization was filed, and notice thereof given to all of the holders of certificates, as provided in the reorganization agreement. As already indicated, the agreement provided that the plan, when thus filed, and notice given, was to be binding upon the holders of certificates who did not dissent therefrom and withdraw their bonds as therein provided. The plaintiff, through Mr. Untermyer, received notice of the filing of the plan; but he did not then, nor thereafter, withdraw the bonds deposited by him for the plaintiff, and he still holds the certificates representing them. The defendants, as commissioners for the bondholders, hold the property acquired by the Northern Alabama Railway Company subject to the certificates. During the trial the plaintiff sought to prove the value of the property of the railway company, but, on objection of the defendants, such evidence was excluded, and exceptions taken. The foregoing seem to be all of the facts which are material to the disposition of the questions presented.

I am of the opinion that the complaint was properly dismissed.

1. The breach of the agreement upon which plaintiff based its right to damages was the alleged violation of the committee to file a plan of reorganization prior to the sale of the property in the foreclosure proceeding. The agreement certainly contains no express provision that the plan should be filed before the sale. So, if there were a breach, it is because such provision can fairly be implied. Is the agreement subject to such construction? It seems to me not, when considered as a whole, in connection with its purpose and the object which it sought to accomplish. Consider the situation. The railway company was insolvent. It had defaulted in the payment of the interest upon its bonds. A suit had been instituted to foreclose the mortgage. A receiver had been appointed, and a sale of the entire property was about to take place. Confronted with this situation, it was desirable that there should be united action on the part of the bondholders, to the end that the property might not be sacrificed on the sale, and that their interests should be protected by acquiring the property for a reorganization. Under these circumstances the agreement was made, in which it was provided that the bondholders should deposit the bonds with the Manhattan Trust Company, "subject to the order and full control of the committee," and that such deposit, in and of itself, should transfer "to the committee the full legal and equitable title thereto for all the purposes of this agreement." The purpose was to acquire the property covered by the mortgage, and "effect a reorgan-

ization of the affairs of the company, either through or without foreclosure," for the benefit of all. Nor does the act of the plaintiff's agent indicate that he supposed the committee was obligated, under the agreement, to file a plan prior to the sale, because he did not object to the sale on this ground, notwithstanding he was notified on the 16th of July, 1895, of the time when the sale would take place, and that no plan had then been and the committee was unable to say when one would be prepared.

2. But assuming that there was a breach of the agreement, in that the committee did not file a plan prior to the sale, I am nevertheless of the opinion that the complaint was properly dismissed, because the plaintiff failed to prove it had sustained damage by reason thereof. When the case was before the Court of Appeals, Judge Gray, delivering the prevailing opinion, said:

"That the plaintiff was not damaged by the failure to file a plan of reorganization prior to the foreclosure sale is evident enough." 170 N. Y. 247, 63 N. E. 289.

This seems to have been the view of the Appellate Division, where Woodward, J., said:

"The railway property was the foundation of the security for the bonds, and it is not clear how the plaintiff could have suffered any loss by the committee purchasing the property and holding it in trust for the bondholders." 52 App. Div. 203, 64 N. Y. Supp. 1099.

The fact that a recovery on the first trial was affirmed by the Appellate Division, and that there was a division of the judges of the Court of Appeals on the subject, is of no importance, so far as the question now under consideration is concerned. The action then was to recover damages for conversion, while here it is to recover damages for the breach of a contract, and the distinction between the two is clear. In the action in its present form, the plaintiff, to recover, must prove that it has been damaged by defendants' acts, whereas, in an action for conversion, the recovery would be measured by the value of the bonds, and this irrespective of whether or not the plaintiff was actually damaged by the defendants' acts. Industrial & General Trust v. Tod, 170 N. Y. 247, 63 N. E. 285. Was the plaintiff damaged by the defendants' acts, and, if so, how? They purchased all of the property covered by the mortgage at the foreclosure sale, which they procured to be transferred to a new corporation organized for the purpose of receiving the same, and then tendered to the plaintiff its share of the securities of such new corporation, including its stock. There is no allegation in the complaint, nor was any evidence offered at the trial, to show that the securities thus tendered to the plaintiff were worth less than the value of its bonds. The bonds of the old company and the securities of the new were based upon the same property. In the old company plaintiff had a lien, while in the new company it has a title. It is of no importance whatever what was the value of the property—whether $500,000 or $3,000,000. The plaintiff's proportionate share of that property is all it is entitled to receive, and this has been tendered to it. The bonds which it deposited gave it an undivided interest in a mortgage which was a lien on the property. The defendants, acting as agent for it and the other bondholders, with the bonds

deposited, purchased the property, and held for its benefit its proportionate share, as represented by the trust certificate. It still has the same proportionate share of the same property, and the only difference is that its lien, by the acts of the defendants, has ripened into a title. How, under such circumstances, can it be said that any damages have been sustained?

3. The complaint was properly dismissed because it appeared at the trial, and the fact was uncontradicted, that on or about July 8, 1898, a plan of reorganization was prepared and filed, notice of which was given to the plaintiff in accordance with the agreement; and, as the plaintiff did not withdraw its bonds, its consent and approval of the plan was, under the terms of said agreement, conclusively given and conferred. The agreement, it will be remembered, provided that the committee was authorized and empowered to prepare and adopt a plan for the reorganization of the affairs of the railway company; that when such plan was adopted a copy should be filed with the Manhattan Trust Company, and notice given to the holders of the trust certificates issued thereunder; and that such plan should become binding upon all of the holders who did not withdraw in the manner specified, unless a majority in interest of the holders of said certificates should within 20 days after such notice file with the trust company their written dissent from the plan proposed. The manner specified in which a holder of a certificate might withdraw is set out in the fifth paragraph of the agreement, which, so far as material, is as follows:

"Any holder of a trust certificate issued hereunder may, at any time within thirty days after the mailing to him of notice of the filing of a plan of reorganization * * * withdraw from this agreement and receive back the bond or bonds deposited by him upon payment of his pro rata share of the expenses theretofore incurred by the committee. * * * Upon the withdrawal of the bonds represented by such certificate or certificates * * * as above provided, the holder * * * shall be thereupon, and without any further act, fully released from the obligations of this agreement and from every such plan of reorganization, but as to every certificate holder who does not, within the said period of thirty days, withdraw bonds represented by his certificate or certificates, his assent and ratification of said plan shall be conclusively and finally assumed, conferred and given."

But it is urged that, the action being at law, the rights of the parties must be determined as of the time when the action was commenced. As a general rule, this would be true, and for the obvious reason that the issues presented in such actions, as determined by the pleadings, are of that time. There are exceptions to the rule, however, one of which is where a fact has arisen subsequent to the joining of issue which either increases, diminishes, or extinguishes the right to a recovery. Such fact can always be proved in a legal action where the same has been set out by appropriate allegations in a supplemental complaint or answer. Howard v. Johnston, 82 N. Y. 271. Here on the 30th of January, 1903, the plaintiff served what is termed an "amended complaint," but which might in some respects be termed "a supplemental complaint," inasmuch as facts are alleged which occurred subsequent to the commencement of the action. But, however this may be, the defendants served an answer to the amended complaint in which they alleged as a separate defense that in July, 1898, they prepared and filed with the Manhattan Trust Company a plan of reorgani-

zation, and gave notice to all of the holders of the trust certificates, including the plaintiff, in accordance with the reorganization agreement; that none of the holders of the trust certificates filed a written dissent from the said plan with the trust company, nor had any of them, including the plaintiff, withdrawn or sought to withdraw from said reorganization agreement, or paid or tendered or offered to pay any share of the expenses incurred by the committee, and by reason thereof plaintiff had assented to and ratified said plan, and was bound by the action of the defendants. It was upon the issue raised by this answer to the amended complaint that the parties went to trial, where the facts set out in this defense were conclusively established. It is true, the plaintiff's agent insisted, at and prior to the time that the plan was filed, that the committee had no right to use the plaintiff's bonds in the purchase of the property; and on the 20th of July, 1898, Mr. Untermyer wrote the committee, in which he said:

"My clients' claim is, as you know, that the committee had no authority to use their bonds in purchasing the property. They will do nothing to affect their rights in the pending litigation."

But the facts, nevertheless, are undisputed that a plan of reorganization was filed, and notice given to Mr. Untermyer, as agent of the plaintiff; that he did not file any written dissent with the Manhattan Trust Company, or endeavor, in the manner provided in the agreement, to withdraw the bonds which he had deposited; and, by express provision of the agreement, a failure to withdraw within the time specified ratified the act of the committee as to the plan filed, and finally and conclusively bound the certificate holders with reference thereto.

The view thus expressed renders it unnecessary specifically to consider the various exceptions taken by the plaintiff during the trial, because, if the conclusion be correct that there was no breach of the agreement, and the plaintiff was not damaged by the acts of the defendants, then it could not have been injured by the rulings to which exceptions were taken.

It follows that the motion should be denied, and exceptions overruled, and judgment directed in favor of the defendants, dismissing the complaint, with costs.

VAN BRUNT, P. J., and INGRAHAM, J., concur. O'BRIEN and HATCH, JJ., concur on the ground that there was no proof of damage.